**Manuel F. CARMONA, Appellant–
Petitioner,**

v.

**STATE of Indiana, Appellee–
Respondent.**

No. 32A05–0406–CR–322.

Court of Appeals of Indiana.

May 18, 2005.

Cynthia P. Helfrich, Casey Law Offices, Brownsburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Following a jury trial, Manuel F. Carmona was convicted of two counts of Battery on a Law Enforcement Officer resulting in Bodily Injury,[1] a class D felony, and Intimidation—Conduct Against Will—Against an Officer,[2] a class D felony. The jury acquitted Carmona of Resisting Law Enforcement with Bodily Injury,[3] a class D felony, and Public Intoxication,[4] a class B Misdemeanor. On appeal, Carmona presents several issues for review that we restate as:

1. Were the jury verdicts on the counts of battery and resisting law enforcement inconsistent and therefore unreliable?

2. Did the trial court improperly enhance Carmona's sentence in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)?

We affirm in part and reverse in part.

On June 25, 2003, Carmona called the Brownsburg Police Department requesting assistance with his teenage son, M.C. Carmona and M.C. had been arguing outside their apartment about M.C. going out that night with friends Carmona disliked. Shortly thereafter, Brownsburg Police Officers Joseph Grimes, Jenny Meinczinger,

---

1. Ind.Code Ann. § 35–42–2–1 (West 2004).

2. Ind.Code Ann. § 35–45–2–1(b)(1)(B) (West 2004).

3. Ind.Code Ann. § 35–44–3–3 (West 2004).

4. Ind.Code Ann. § 7.1–5–1–3 (West, PREMISE through 2004 2nd Regular Sess).

and Kevin Huntsman were dispatched to the apartment complex. When they arrived, Carmona, M.C., and approximately four other individuals were standing outside yelling and screaming. Carmona was highly agitated, cursing, and making threats to his son. The officers separated the individuals to determine what had occurred. M.C. told Huntsman that Carmona had pulled him out of a friend's car and hit him. M.C.'s lip was bleeding and his chest and arm were scratched. Carmona told Grimes he was having trouble with M.C. and did not want M.C. living at the apartment any longer. Grimes smelled alcohol on Carmona and believed him to be intoxicated.

After speaking with the various individuals at the scene, the officers decided to arrest Carmona for battery against M.C. The three officers walked in the direction of Carmona who was then engaged in a conversation on a portable phone. Grimes placed Carmona's left hand behind his back and began to place a handcuff on his left wrist when Carmona attempted to shove Grimes away. Huntsman came to Grimes's aid and a physical altercation between the three men ensued. During the struggle, the group fell to the ground and Carmona struck Huntsman on the side of the head. M.C. tried to intervene once the altercation began and Meinczinger attempted to restrain him. The tussle continued until Grimes, concerned that Carmona or M.C. was grabbing for the gun on his utility belt, sprayed M.C. with pepper spray. Thereafter, the situation was subdued and the officers called for emergency

personnel to examine M.C. for injuries. As M.C. was being examined, Carmona challenged Grimes and Huntsman to a "one on one" fight. *Transcript* at 155. Carmona also told Grimes at the scene and in the processing room at the Brownsburg Police Department that he wanted to "f—ing kill [Grimes]." *Id.* Due to the struggle, Grimes sustained a cut to his ring and pinky finger causing bleeding, redness, and swelling to his hand, wrist, and lower arm. Huntsman suffered redness and swelling to his neck, chin, and left arm, and had a red mark under his left eye that caused a burning and stinging sensation.

On June 27, 2003, the State charged Carmona with: Count I, felony battery (based on the battery against Grimes); Count II, felony battery (based on the battery against Huntsman); Count III, resisting law enforcement; Count IV, felony intimidation (based on the threat against Grimes); and Count V, public intoxication.[5] On January 27, 2004, a jury convicted Carmona on Counts I, II, and IV, and acquitted him on Counts III and V.

At Carmona's sentencing hearing on February 23, 2004, the State alleged that Carmona had an extensive criminal history as noted in his Pre–Sentence Investigation Report (PSI). The PSI listed substantial criminal activity over a twenty-year period including charges of armed robbery, aggravated assault, theft, battery, domestic battery, and several drug-related offenses. All but one of the charges occurred in Cook County, Illinois. Carmona, however, disputed the vast majority of items listed in the criminal history in his PSI.[6] There-

---

5. Carmona was also charged with battery against M.C., but based on M.C.'s lack of cooperation with prosecutors, this count was dismissed before trial.

6. This was not the first time Carmona had disputed his criminal history. At his initial hearing on June 27, 2003, Carmona disagreed

with the State's assertion that he had previous convictions for armed robbery, domestic violence, and aggravated assault. When the State asked what the correct history was, Carmona responded: "Well its been quite a long time I haven't gotten in any trouble until [now]." *Transcript* at 15.

fore, the trial court ordered the Hendricks Superior Court Probation Department to make further investigation with regard to the disputed convictions· and continued the sentencing hearing until April 19, 2004. At the rescheduled hearing, Carmona continued to dispute the information listed in the PSI except for two charges: (1) a June 29, 1982, criminal damage to property, and (2) a June 19, 1991, delivery of a controlled substance. Thereafter, in determining the sentence, the trial court found four aggravating factors: (1) Carmona's criminal activity (relying only on the two admitted crimes); (2) Carmona had previously been a member of a gang; (3) Carmona was in need of rehabilitative treatment that could best be provided by commitment to a penal facility; and (4) sentencing Carmona to concurrent terms would depreciate the seriousness of the crimes. As a slight mitigating factor, the trial court noted that Carmona had completed anger management classes while at the Hendricks County Jail. The trial court found that the aggravators outweighed the mitigators and sentenced Carmona to 915 days each for Count I and II, sentences to be served consecutively, and 915 days on Count IV, sentence to be served concurrently with Counts I and II.

On appeal, Carmona asserts that his battery convictions are inconsistent with a not guilty verdict on the charge of resisting law enforcement. Further, Carmona asserts that the trial court erred in sentencing him to consecutive sentences and in enhancing his sentence beyond the presumptive term.

### 1.

Carmona claims that the jury verdicts on Counts I and II (battery on law enforcement officers) and Count III (resisting law enforcement) are inconsistent and therefore unreliable. In reviewing a challenge to the consistency of jury verdicts, we are guided by the following standard:

Our supreme court does not demand perfect logical consistency in verdicts. *Hoskins v. State,* 563 N.E.2d 571, 577 (Ind.1990). Only extremely contradictory and irreconcilable verdicts warrant corrective action. *Id.* Moreover, jury verdicts do not have to be consistent in cases where one criminal transaction gives rise to criminal liability for separate and distinct offenses. *Douglas v. State,* 441 N.E.2d 957, 962 (Ind.1982). A verdict may be inconsistent or even illogical, but nevertheless be permissible if it is supported by sufficient evidence. *Totten v. State,* 486 N.E.2d 519, 522 (Ind.1985). Generally, where the trial of a defendant results in acquittal upon some charges and convictions upon others, the results will survive a claim of inconsistency where the evidence is sufficient to support the convictions. *Parks v. State,* 734 N.E.2d 694, 700 (Ind. Ct.App.2000), *trans. denied.*

*Robinson v. State,* 814 N.E.2d 704, 709 (Ind.Ct.App.2004).

Indiana courts have routinely made efforts to ensure that opposing verdicts on different counts can be rationally reconciled. *Howard v. State,* 816 N.E.2d 948 (Ind.Ct.App.2004). To this end:

[V]erdicts are inconsistent only where they cannot be explained by weight and credibility assigned to the evidence. Thus, an acquittal on one count will not result in reversal of a conviction on a similar or related count because the former will generally have at least one element (legal or factual) not required for the latter. In such an instance, the finder of fact will be presumed to have doubted the weight or credibility of the evidence presented in support of this distinguishing element. Accordingly, verdicts that initially may seem inconsis-

tent on some level are not legally inconsistent if they can be explained by the fact-finder's exercise of its power to assign the proper weight to and either accept or reject certain pieces of evidence.

*Id.* at 963–64 (citations omitted).

■ As a result of the altercation between Carmona, Grimes, and Huntsman, the State charged Carmona with two counts of battery against a law enforcement officer and one count of resisting law enforcement. To sustain the battery convictions, the State was required to prove that Carmona: (1) knowingly or intentionally touched Grimes and Huntsman; (2) in a rude, insolent, or angry manner; (3) while the officers were engaged in the execution of their official duties; (4) causing bodily injury. *See* I.C. § 35–42–2–1(a)(1)(B). To convict Carmona of resisting law enforcement, the State needed to demonstrate that Carmona: (1) knowingly or intentionally; (2) forcibly resisted, obstructed, or interfered with Grimes and/or Huntsman; (3) while the officers were lawfully engaged in the execution of their duties; (4) causing bodily injury. *See* I.C. § 35–44–3–3. Additionally, before deliberations began, the trial court provided the jury with the following statutory definitions of knowingly and intentionally:

(a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

Ind.Code Ann. § 35–41–2–2(a)–(b) (West 2004). The jury convicted Carmona on the two battery counts but acquitted him of the resisting charge.

The battery and resisting charges share similar, but not identical, elements. Demonstrating the former requires proof of a knowing or intentional rude, insolent, or angry touching, whereas the latter requires proof of a knowing or intentional forcible resistance, obstruction, or interference. Carmona's trial strategy—as demonstrated through cross-examination questioning and the defense's presentation—appeared to be to raise reasonable doubt about whether he knowingly or intentionally resisted arrest. To this end, the defense focused on conflicting testimony regarding when and if Carmona was told he was under arrest before Grimes touched him, Carmona's disbelief that he was the one arrested since he had summoned police to the scene, and the rapid manner in which the officers approached Carmona immediately before the fight. During cross-examination, defense counsel solicited testimony that Grimes claimed he simultaneously attempted to handcuff Carmona while beginning to tell Carmona he was under arrest. Similarly, Meinczinger provided the less-than-definitive testimony that she "believe[d]" Grimes told Carmona he was under arrest before the fight, *Transcript* at 294, and Huntsman testified that Carmona was "very consumed" in a phone call just before the fight. *Id.* at 249. Moreover, Carmona testified that no one told him he was under arrest before Grimes grabbed his hand, but he was on the phone when the officers approached him and he told Grimes the call was an emergency relating to his daughter being in the hospital. Carmona also testified that the officers never told him to stop resisting and expressed disbelief he was arrested because *he* was the one who called the police. During closing argument, defense counsel reiterated these points and directed the jury's attention to a videotape of the incident that they had previously viewed: [7]

7. Meinczinger's police vehicle was equipped with a video recording device, and when she

You saw three officers coming up very quickly, coming toward the man standing there. Isn't that what you saw? Isn't that [sic] you saw on the tape, three officers coming very fastly [sic]. And I asked questions, how fast were they going, were they going like this, were they going like this, or were they going like this. And you saw that. They weren't sure what they told him. They weren't sure if they tell him what he's under arrest for. These officers all of a sudden approached him and grabbed him, just grabbed him out of the blue. What would you expect this gentleman to do. [sic] He had no reason to believe he was being arrested. He called the police. This gentleman right here called the police. Do you think he was planning on being arrested?

\* \* \*

But [Meinzinger] had made the determination that [Carmona] was a bad man, and you could tell that by the speed that they approached him, because they weren't walking up to him very politely. Now how [sic] you would act when expect [sic] a police officer walk up to you. You'd expect him to walk up to you in a slow manner. Sir, you need to get off the phone, you need, you need to, but they approached him, they were coming at him in a quick manner. There was never a pause. You remember the tape, there was never a pause in their step. They were coming at him and converging on him. And, and they made a bad situation worse, that's what happened here, the police just made a bad situation worse in the way that they handled this.

*Id.* at 402, 405.

Based on the foregoing, the differing verdicts on the battery and resisting charges may be explained by virtue of the fact-finder's exercise of its power to assign weight to and either accept or reject certain pieces of evidence.[8] That is, while the jury determined that Carmona committed battery, he did so in the context of a physical fight triggered by Grimes putting his hand on Carmona and not in the context of resisting, interfering, or obstructing his own arrest. The jury could have come to this, admittedly questionable conclusion, based on their acceptance of evidence that Carmona was not told he was under arrest, and was rapidly approached by three officers while engaged in an urgent phone call and in an agitated state.[9] Thus, the

---

arrived at the scene she positioned the front end of her vehicle to face Carmona's apartment door to videotape what transpired. At trial, the video was authenticated, offered into evidence, and played to the jury during the State's presentation of evidence. Although admitted as an exhibit, the trial court retained the copy of the videotape rather than forwarding it with the rest of the trial record for our review. Therefore, we have not viewed the videotape, although such viewing may have been helpful.

8. We quote the following passage from *Owsley v. State*, 769 N.E.2d 181 (Ind.Ct.App. 2002), with approval:

We are cognizant that opinions often state that "we will not attempt to interpret the thought process of the jury in arriving at its verdict...." *Mitchell v. State*, 726 N.E.2d 1228, 1239 (Ind.2000). In actuality, it appears that opinions in the area of inconsistent verdicts engage in much analysis of the jury's thought processes by closely examining the evidence and determining that the jury in arriving at its verdicts must have assigned a certain amount of weight to certain evidentiary details, or judged the credibility of witnesses in a certain manner, or found the elements of one offense proven and the different elements of another not proven.

*Id.* at 187 n. 1.

9. Despite our holding, we in no way condone Carmona's actions.

jury determined that a required element of the resisting offense was not proven. While perfect logical consistency is lacking, these are not irreconcilable verdicts warranting corrective action. *See, e.g., Owsley v. State*, 769 N.E.2d 181 (reversing conviction for conspiracy to commit dealing in cocaine because it was fatally inconsistent with defendant's acquittal of possession of cocaine as the overt act pled was providing his alleged co-conspirator with the cocaine).

Moreover, the evidence is overwhelming that Carmona battered Grimes and Huntsman and easily withstands a sufficiency challenge. Where a defendant is acquitted of some charges but convicted of others, the result will survive an inconsistency claim where the evidence is sufficient to support the other convictions. *Robinson v. State*, 814 N.E.2d 704. Our standard of review in sufficiency of the evidence claims is well settled:

> We will not reweigh the evidence or consider the credibility of witnesses. Only the evidence most favorable to the verdict together with all reasonable inferences that can be drawn therefrom will be considered. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed.

*King v. State*, 799 N.E.2d 42, 46 (Ind.Ct. App.2003) (citation omitted). Here, as noted previously, to sustain a conviction for battery of a law enforcement officer, the State was required to prove that Carmona: (1) knowingly or intentionally touched Grimes and Huntsman; (2) in a rude, insolent, or angry manner; (3) while the officers were engaged in the execution of their official duties; (4) causing bodily injury. The evidence demonstrated that in the struggle between Carmona, Grimes, and Huntsman, Carmona pushed and grabbed at Grimes's hands and put a headlock on Huntsman. The jury also watched a videotape of the incident, and Meinczinger testified that: "[Grimes] grabbed his left hand and got one handcuff on him, and then the fight was on. And it was hands all over the place and people on the ground." *Transcript* at 279. At the time of the scuffle, the officers were lawfully arresting Carmona for battery of his son based on their interviews with various witnesses at the scene and viewing physical injuries to M.C. Moreover, Grimes and Huntsman also testified to their respective injuries sustained in the fight and the pain caused by those injuries. The evidence was sufficient to support Carmona's battery convictions.

### 2.

Carmona also asserts that the trial court erred in ordering his battery sentences to be served consecutively, and, relying on *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), that his sentence was improperly enhanced. Because we lack confidence in Carmona's enhanced sentence as discussed herein, we utilize our discretion to vacate Carmona's sentence and remand for resentencing without reaching the issue of whether imposition of consecutive sentences was proper.[10]

In *Blakely*, the United States Supreme Court applied the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which states that "[o]ther than the fact of

---

**10.** We note, however, that our supreme court recently held that imposition of consecutive sentences does not run afoul of *Blakely*. *See Smylie v. State*, 823 N.E.2d 679, 686 (Indiana 2005) ("[t]here is no constitutional problem with consecutive sentencing so long as the trial court does not exceed the combined statutory maximums").

a prior conviction any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely*, in turn, defined the statutory maximum for *Apprendi* purposes as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 124 S.Ct. at 2537.

In the months following the *Blakely* decision, the courts of this state have struggled to gauge the decision's impact on Indiana, and this court in particular has been confronted with *Blakely* issues on a mounting scale. The State has consistently argued on appeal, as it does in the case at hand, that the defendant waived the issue by failing to object at trial and, in the alternative, that *Blakely* does not implicate Indiana's sentencing scheme. Our supreme court recently rejected these arguments in *Smylie v. State*, 823 N.E.2d 679. In *Smylie*, the court held, "portions of Indiana's sentencing scheme violate the Sixth Amendment's right to trial by jury" and "the new rule of *Blakely* should apply to all cases pending on direct review at the time *Blakely* was announced in which the appellant has adequately preserved appellate review of the sentence." *Id.* at 681.

■ Carmona has adequately preserved appellate review of his sentence, as he expressly presented a *Blakely* claim in his brief on direct appeal. *See Smylie v. State*, 823 N.E.2d 679. Therefore, we turn to the merits of his claim.

As previously noted, the jury found Carmona guilty of battery, a class D felony, against Grimes and Huntsman, based on Grimes's and Huntsman's status as law enforcement officers. Pursuant to statute, conviction of a class D felony carries a sentencing range of one to three years and a presumptive sentence of one and one-half years. Ind.Code Ann. § 35–50–2–7 (West 2004). Thus, the statutory maximum for *Blakely* purposes is one and one-half years.

Here, at sentencing, the court found the following aggravating circumstances: (1) Carmona's criminal activity (relying only on the two admitted crimes); (2) Carmona had previously been a member of a gang; (3) Carmona was in need of rehabilitative treatment that could best be provided by commitment to a penal facility; and (4) sentencing Carmona to concurrent terms would depreciate the seriousness of the crimes. The trial court found one mitigating circumstance—Carmona's completion of an anger management class while in jail for the instant offense—but stated this factor did not warrant substantial weight. After balancing the aggravating circumstances with the lone mitigator, the trial court imposed an enhanced sentence of two and one-half years on each count.

■ We initially note that the fourth aggravating factor does not pertain to the enhancement of Carmona's sentence beyond the statutory maximum and therefore we do not address it further. We also note that despite claiming the second aggravator, membership in a gang, was an improper aggravator under *Blakely*, Carmona admitted in his PSI he had been a member of the Spanish Cobras, a Chicago gang, from when he was a teenager until he was 23 or 24 years old. At the sentencing hearing, despite strenuously objecting to the criminal history listed in the PSI, Carmona did not object to his admission of past gang activity contained therein. In fact, at the rescheduled sentencing hearing, defense counsel stated: "[W]e've reviewed the pre-sentence investigation and other than, uh, the convictions that my client is disputing, uh, everything else uh pretty much speaks the truth." *Transcript* at 470. These statements during

the sentencing hearing, and the failure to object to the gang membership information in the PSI, amount to Carmona's admission that he was a gang member. *See Ryle v. State,* 819 N.E.2d 119, 122 (Ind.Ct. App.2004) ("Ryle's statements [that he had no additions or corrections to his PSI], and his failure to object to·the information contained . in the· presentence report, amount to an admission"). Thus, the· trial court's reliance on Carmona's former membership in a gang to enhance his sentence would not implicate *Blakely. See Teeters v. State,* 817 N.E.2d 275, 279 (Ind. Ct.App.2004) ("[a] fact that is admitted by the defendant does not run afoul of the *Blakely/Apprendi* constitutional requirements"), *trans. denied.*

 We do not believe, however, that under the circumstances this aggravator may be used to justify imposition of an enhanced sentence. First, the circumstances of Carmona's former gang membership appear more mitigating than aggravating. Carmona chose to leave the gang over fourteen years before the instant offense, was beaten when he left the gang, and relocated from Illinois to Indiana for fear of additional retaliation from gang members. Second, cases where gang membership has been found to be a valid aggravator fall generally into one of two categories: (1) the instant offense is linked to a defendant's gang membership, *see, e.g., Groves v. State,* 787 N.E.2d 401 (Ind.Ct.App.2003) (finding consideration of gang membership to be proper aggravator in case where underlying offense was murder of rival gang member); or (2) the defendant's gang membership is contemporaneous or close in time to the instant offense, *see, e.g., Jackson v. State,* 697 N.E.2d 53 (Ind.1998) (considering defendant's current gang membership as an aggravating factor). Neither of these situations is present in the instant

case—Carmona's gang membership ended years before, and was wholly unrelated, to the instant offense. Therefore, while Carmona's former gang membership is not an improper aggravator·under *Blakely,* based on the facts of this case, it cannot be properly used to justify imposition of an enhanced sentence.

 We thus turn to the remaining two aggravators utilized by the trial court, Carmona's criminal history and the need for rehabilitation best provided by commitment to a penal facility. As Carmona concedes, prior convictions as shown by a defendant's criminal history are expressly exempt from the *Apprendi* rule as clarified by *Blakely. See Carson v. State,* 813 N.E.2d 1187 (Ind.Ct.App.2004). What exactly constitutes Carmona's criminal history is, however, a matter of substantial debate. At the first sentencing hearing, Carmona admitted to two of the items listed as his criminal history (criminal damage to property and delivery of a controlled substance), but vigorously asserted that the remaining charges, which included armed robbery, aggravated assault, assault, battery, and various drug-related offenses, were not his. At Carmona's request, the trial court continued the sentencing hearing to allow verification of the offenses. Thereafter, the State prepared an updated PSI that provided supplemental information for several charges but still attributed the entire criminal history to Carmona. The updated PSI contained the following note:

> The above information about Mr. Carmona's criminal history was obtained through NCIC and the Cook County Clerk's Office. The· above cases with cause numbers were verified through the Offender's date of birth. The Officer spoke to Annie at the Cook County Clerk's Office on 2/26/04. She verified the Offender has numerous prior

charges in Cook County and she sent the docket sheets on several of his cases. She stated she was unable to send all of his cases from the 1980's [sic]. Some of the dispositions of the above cases were received after the original PSI was submitted to the Court.

*Appellant's Supp. Appendix* at 36.

At the rescheduled sentencing hearing, Carmona's counsel outlined the unsuccessful steps he had taken in attempting to verify or disprove the contested charges. Carmona also continued to dispute the majority of the offenses listed as his criminal history. In response, the following exchange occurred between the State and defense counsel:

[State]: Judge, this was reset on the defense counsel's request from our February Twenty-third, Two Thousand and Four, sentencing date. He's had from February Twenty-third till [sic] today to verify. The way we left it you had ordered that in your new pre-sentence report to uh try to validate or invalidate defense counsel, defendant, defendant's claims that some of these convictions were not (inaudible). My understanding was when we left that room [defense counsel] was to do that as well, to provide any information Mr. Carmona could provide to actually disprove what we believe are his valid convictions. The State is ready to proceed and the State was ready to proceed on February Twenty-third.

[Defense Counsel]: How can we disprove stuff that has no, uh, how can we disprove stuff, there's [sic] no case numbers. Uh, you're the one that, you're the one that's putting it on the Court, we're disputing it, we're asking (inaudible) you to prove that. Prove it.

*Transcript* at 470–71. Thereafter, in issuing its ruling, the trial court indicated that it was only relying upon the uncontested items of Carmona's criminal history as an aggravating factor:

[Carmona] does have, uh, at least by his own admission two convictions for previous crimes. He disputes a number of the charges that are listed in the [PSI], but he has admitted that he did, uh, have a conviction for damage to property in Cook County, Illinois, and he also admitted that, uh, to the delivery of a controlled substance as a felon in Cook County, Illinois. So he admitted two specific crimes that he did commit, though he disputes a number of the other matters.

*Id.* at 488–89.

Carmona now asserts that the trial court erred in considering the criminal damage to property charge as evidence of his criminal history since the charge was dismissed and the stated disposition in the PSI is "unknown." *Appellant's Supp. Appendix* at 33. While Carmona arguably had a duty to correct the trial court's misperception at the sentencing hearing, this mistake, if it was one, only highlights the obvious confusion surrounding Carmona's criminal history. Moreover, without determining if the lone uncontested felony drug conviction could support Carmona's enhanced sentences, our inability to independently review any documentation in the record to support or contradict Carmona's disputed criminal history, leads us to question the reliability of the enhanced battery sentences and conclude that we must vacate Carmona's battery sentences and remand for resentencing.

On remand, State and defense counsel may continue to disagree regarding who has the burden at sentencing to disprove criminal history contained in a PSI. In that respect, we note that a sentencing court must utilize a PSI in its determination of a defendant's sentence. Ind.Code Ann. § 35–38–1–8 (West 2004). The contents of

the PSI must be disclosed to the convicted person. I.C. § 35–38–1–12 (West 2004). The convicted person should be afforded a fair opportunity to controvert the material contained within the presentence report. *Id.* Furthermore:

> [T]he Indiana Code does not allocate any burdens respecting the production of evidence or persuasion in the sentencing area of the criminal process. Generally, parties are concerned with demonstrating or refuting the accuracy of the information contained in the presentence report. The report itself is a theoretically neutral document of the probation department, and the assertions in the report will be accepted as true unless challenged by the defendant. Therefore, the initial burden of production would rest with the defendant in disputing the information contained within the report. Whether the defendant would be required to produce evidence or merely deny the information would depend upon whether the information consists of supported or naked allegations. However, it seems clear that it is the defendant's responsibility to bring to the trial court's attention any disputed facts regarding sentencing criteria.

*Gardner v. State,* 388 N.E.2d 513, 517–18, 270 Ind. 627, 634 (Ind.1979) (footnotes omitted).

■ Here, Carmona disputed the criminal history information contained in the PSI but, not surprisingly, was unable to disprove the charges. Indeed, we are hard-pressed to see how Carmona could have proven a negative. Admittedly, this situation is complicated by the fact that the disputed convictions occurred in Illinois rather than Indiana, but the State is in a far better position than Carmona to verify his criminal history. We therefore hold that where a defendant vigorously contests his criminal history, and that criminal history is highly relevant to his sentence, it is incumbent upon the State to produce some affirmative evidence, e.g., docket sheets, certified copies of judgment of convictions, affidavits from appropriate officials, etc.,[11] to support a criminal history alleged in a PSI and urged as the basis for sentence enhancement.[12] Based on the unreliability of Carmona's criminal history and our inability to perform an independent review of the issue, we cannot say with confidence that his sentence was properly enhanced. Therefore, we vacate Carmona's sentences for his battery convictions and remand for resentencing consistent with this opinion.

Judgment affirmed in part and reversed in part.

ROBB, J., and BAILEY, J., concur.

---

**11.** In its brief, the State neglects to mention anything about the dispute over Carmona's criminal history; rather, the State asserts in its brief:

> Prior to the instant offense, Defendant had been arrested approximately thirteen times and convicted five times in Cook County, Illinois. Specifically, prior to the instant offense, Defendant was convicted of delivery of marijuana, damage to a vehicle, a lesser charge for aggravated assault, felony delivery of a controlled substance, and delivery of marijuana. Additionally, Defen-

dant had numerous probation violations filed, one of which he pled guilty to.

*Appellee's Brief* at 19 (citations omitted). We remind the State of its duty of candor toward the tribunal. *See* Ind. Professional Conduct Rule 3.3.

**12.** We reiterate that such proof is not required absent a challenge by the defendant to the veracity of his criminal history. *See Dillard v. State,* No. 49A04–0408–CR–465, 827 N.E.2d 570, 2005 WL 1163258 (May 18, 2005).