## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 23 2020, 10:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Brian Woodward
Office of the Lake County Public
Defender – Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roger P. Orich,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 23, 2020

Court of Appeals Case No.
19A-CR-2394

Appeal from the Lake Superior
Court

The Honorable Samuel L. Cappas,
Judge

Trial Court Cause No.
45G04-1809-F5-195

**Mathias, Judge.**

[1] Roger P. Orich ("Orich") pleaded guilty in Lake Superior Court to one count of Level 5 felony possession of child pornography and was sentenced to five years,

with four years to be served in the Department of Correction ("DOC") and one year in community corrections. Orich appeals and presents three issues, which we restate as:

I. Whether the trial court abused its discretion by denying Orich's request to remove copies of the charging information and the probable cause affidavit from the presentence investigation report;

II. Whether the trial court abused its discretion by considering aggravating factors that were not supported by the record; and

III. Whether the trial court overlooked mitigating factors that were clearly supported by the record.

[2] We affirm.

## Facts and Procedural History

[3] The facts, as admitted by Orich at his guilty plea hearing, are that he collected images depicting children under the age of twelve displaying their genitals, uncovered breasts, and being fondled. Orich also admitted that these images had no literary, artistic, political, or scientific value. On September 21, 2018, the State charged Orich with Level 5 felony possession of child pornography and Level 6 felony possession of child pornography. On September 10, 2019, Orich pleaded guilty to both charges.[1]

---

[1] The trial court "merged" the Level 6 felony conviction with the Level 5 felony charge for purposes of sentencing and entered judgment of conviction only on the Level 5 felony.

[4]  At the subsequent sentencing hearing, Indiana State Police detective Vicki Maxwell ("Detective Maxwell") testified regarding the investigation of Orich. She explained that the case began when she received a tip from the National Center for Missing and Exploited Children that someone had uploaded pictures to the Internet that depicted child pornography. Further investigation determined that the person who had uploaded the pictures was Orich. Detective Maxwell learned that, in 1991, Orich had been charged with battery and child molesting against his adopted daughter but convicted only of battery. In 1993, he was charged with, but found not guilty, of molesting the same victim. Orich had also been arrested in 1981 for exposing himself to school children.

[5]  Detective Maxwell also explained that, when the police executed the warrant to search Orich's residence, they found various items, including "naked posters of women on the walls, anime. Anime children were on his sheets." Tr. p. 23. They also found a chair with a painting of a nude woman tied to the chair with a gag-ball in her mouth, sex toys, women's lingerie, and dolls. She explained that all of the items appeared to be sexual in nature. In the nightstand next to Orich's bed the police found pictures of child pornography. She also testified that, during the search of Orich's home, the police found DVDs containing numerous image files of child pornography and a hard drive containing over 340,000 images of pornography, including images of adult pornography; bondage; sexual torture; child pornography; virtual pornography of adults, children, and infants; children in "seductive" poses; infants with their genitals

exposed; children bathing; children using the toilet; and sexual acts with child dolls.

[6] A search of an external hard drive found in Orich's home revealed 4,790 pornographic images. Some of the images depicted the worst forms of child sexual assault, including young children being raped vaginally and anally by adults. The police submitted the images found in Orich's collection to the National Center for Missing and Exploited Children, who identified 366 images as known images of child pornography involving scores of known child victims. A search of Orich's computer also revealed that he had used an internet search engine to look for several disturbing terms, including "daughter yells no daddy, stop daddy, violent rape, 3D dad f**king baby son, 3D incest sex, 3D kidnap little girl torture, 3D little girls dead abused." Tr. p. 26. The search engine had also been used to look for images of bestiality.

[7] At the sentencing hearing, Orich presented the testimony of psychologist Robert Coyle ("Dr. Coyle"), who began treating Orich in January 2019 after he had been charged in the present case. Dr. Coyle testified that Orich had a hoarding disorder and that his collection of child pornography was a "small part" of the items he collected, including such innocuous items as comic books. Tr. p. 52. Dr. Coyle testified that Orich had an average IQ of 94 but had a lower level of cognitive functioning, which he attributed to a childhood injury and chronic alcohol abuse. On cross-examination, however, Dr. Coyle admitted that most of the information he had regarding Orich had been self-reported by

Orich. He also admitted that Orich had underreported the magnitude and nature of his pornography collection.

[8]  At the conclusion of the sentencing hearing, the trial court found as mitigating that Orich had pleaded guilty, that he had expressed remorse, and that incarceration would cause an undue hardship on Orich due to his mental health issues. The trial court also noted that Orich had led an apparently law-abiding life for twenty years. The trial court found as aggravating Orich's prior criminal history and his pattern of inappropriate behavior involving children. The trial court also found as aggravating the quantity of images Orich possessed and the horrific nature of the abuse depicted. The trial court noted that Orich underreported his conduct to Dr. Coyle. The trial court sentenced Orich to five years, with four years to be served in the DOC and one year to be served in community corrections. Orich now appeals.

## I. Presentence Investigation Report

[9]  Orich first claims that the trial court erred by denying his request to remove copies of the charging information and the probable cause affidavit from the presentence investigation report ("PSIR"). In the present case, the charging information provided:

> COUNT I
> [POSSESSION OF CHILD PORNOGRAPHY (a Level 5 Felony)]
>
> Vicki Maxwell, upon oath, says that on or about September 19, 2018, in the County of Lake, State of Indiana, Roger Paul Orich did knowingly or intentionally possess or access with intent to

view pictures or photographs that depicts or describes sexual conduct by a child who appears to be less than eighteen (18) years of age and that lacks serious literary, artistic, political or scientific value and the child who is depicted or described is less than twelve (12) years of age contrary to I.C. 35-42-4-4(d) and I.C. 35-42-4-4(e)(1) and against the peace and dignity of the State of Indiana.

COUNT II
[POSSESSION OF CHILD PORNOGRAPHY (a Level 6 Felony)]

Vicki Maxwell, upon oath, says that on or about September 19, 2018, in the County of Lake, State of Indiana, Roger Paul Orich did knowingly or intentionally possess or access with intent to view pictures or photographs that depicts or describes sexual conduct by a child who appears to be less than eighteen (18) years of age and that lacks serious literary, artistic, political or scientific value contrary to I.C. 35-42-4-4(d) and against the peace and dignity of the State of Indiana.

Appellant's App. p. 10.

[10] The probable cause affidavit described the execution of the search warrant at Orich's home and detailed some of the items found during the search. Specifically, it described fourteen photos of child pornography found near Orich's bed, which included depictions of children from the age of five through sixteen in various sexual situations, including exposing their genitals, buttocks, and breasts. One of these photos depicted a three-to-five-year-old child holding a man's penis; and another depicted a four-to-six-year-old child with a man's penis in her vagina. Six other pictures were found that depicted young girls

between the ages of seven to twelve in their underwear and in sexually suggestive poses.

[11] The probable cause affidavit further stated that the police found 691 images containing child pornography on various electronic devices in Orich's home. The victims depicted in these images ranged in age from infants to adolescents. The images depicted young boys and girls in underwear or bathing suits, in sexually suggestive poses. Others depicted nude children, and some had been altered to put cartoon anime faces on the children. Others depicted young girls giving and receiving oral sex from adult men or having sex with adult men. The affidavit then gave a detailed description of six of these images, which included a young girl with a man's penis in her mouth, another young girl licking a man's penis, a girl with what appeared to be semen on her, another of a baby with a penis in her mouth, another with a young girl with a penis in front of her mouth, and one of a baby with her genitals exposed. *Id*. at 11–12.

[12] At the sentencing hearing, Orich asked that the trial court "excise" the charging information and the probable cause affidavit from the PSIR. Tr. p. 73. The trial court denied this request, noting that the DOC uses the PSIR in determining placement. Orich now claims that the trial court erred by denying his request.

[13] In addressing Orich's claim, we note that decisions regarding the admission of evidence at a sentencing hearing are entrusted to the discretion of the trial court. *Couch v. State*, 977 N.E.2d 1013, 1016 (Ind. Ct. App. 2012), *trans. denied*. The Indiana Rules of Evidence, other than those regarding privileges, do not apply

at sentencing hearings. Ind. Evidence Rule 101(d)(2). We have explained before that:

> [t]he rationale for the relaxation of evidentiary rules at sentencing is that in a trial the issue is whether a defendant is guilty of having engaged in certain criminal conduct. Rules of evidence narrowly confine the trial contest to evidence that is strictly relevant to the crime charged. At sentencing, however, the evidence is not confined to the narrow issue of guilt. The task is to determine the type and extent of punishment. This individualized sentencing process requires possession of the fullest information possible concerning the defendant's life and characteristics.

*Thomas v. State*, 562 N.E.2d 43, 47–48 (Ind. Ct. App. 1990).

[14] Indiana Code section 35-38-1-8(a) provides that, with certain exceptions for a person convicted of a Level 6 felony,[2] "a defendant convicted of a felony may not be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court." *See also* Dickenson v. State, 835 N.E.2d 542, 555 (Ind. Ct. App. 2005) ("The only reason to file a PSI[R] is to provide information to the court for use at individualized sentencing."), *trans. denied*.

[15] The content of a PSIR is controlled by Indiana Code section 35-38-1-9, which first describes the presentence investigation as consisting of "the gathering of

---

[2] Indiana Code section 35-38-1-8(c) provides that a trial court may sentence a person convicted of a Level 6 felony without considering a written PSIR. If, however, a defendant convicted of a Level 6 felony is sentenced to the DOC or a community corrections program, then the probation officer must prepare a report to be sent to the DOC.

information with respect to . . . the circumstances attending the commission of the offense [and] . . . the convicted person's history of delinquency or criminality, social history, employment history, family situation, economic status, education, and personal habits." *Id*. at § 9(b)(1), (2). The investigation must also gather information regarding "the impact of the crime upon the victim," and whether the convicted person is in a licensed or certified profession, or employed, or previously employed, as a teacher. *Id*. at § 9(b)(3), (4). The presentence investigation *must* include: "(1) any matters the court directs to be included; (2) any written statements submitted to the prosecuting attorney by a victim under IC 35-35-3; (3) any written statements submitted to the probation officer by a victim; and (4) preparation of the victim impact statement required under section 8.5 of this chapter," and *may* include "any matter that the probation officer conducting the investigation believes is relevant to the question of sentence." *Id*. at § 9(c).

[16]     Once a PSIR is prepared, a trial court must, prior to sentencing, either "advise the defendant or his counsel and the prosecuting attorney of the factual contents and conclusions of the [PSIR]" or "provide the defendant or his counsel and the prosecuting attorney with a copy of the [PSIR]." Ind. Code § 35-38-1-12(a). If the defendant is sentenced to a term of imprisonment, the PSIR must be sent to the DOC.

[17]     Thus, under the statutes governing PSIRs, there is no requirement that a PSIR must include the charging information or probable cause affidavit. But there is also nothing that prohibits the inclusion of these items in a PSIR. To the

contrary, a PSIR must include "the circumstances attending the commission of the offense," I.C. § 35-38-1-9(b)(1), and may include "any matter that the probation officer conducting the investigation believes is relevant to the question of sentence." *Id*. at § 9(c). Thus, if the probation officer believes the charging information or probable cause affidavit to be relevant, they may be included in the PSIR. We therefore cannot say that the trial court abused its discretion by denying Orich's request to excise the charging information and probable cause affidavit from the PSIR.

[18] Furthermore, the charging information and probable cause affidavit were already a part of the trial court's record. And the testimony of Detective Maxwell at the sentencing hearing detailed the circumstances of Orich's possession of child pornography. We therefore fail to see how the inclusion of the charging information or the probable cause affidavit in the PSIR prejudiced Orich beyond the information that was already in the trial court's record.

[19] Orich nevertheless claims that this court has held before that, simply because a defendant acknowledges that the information in a PSIR is correct, does not mean that the facts contained in the PSIR may be used to enhance a sentence. *See* Appellant's Br. at 9 (citing *Vela v. State*, 832 N.E.2d 610, 613–14 (Ind. Ct. App. 2005)). *Vela* was decided after our supreme court held that *Blakely v. Washington*, 542 U.S. 296 (2004), applied to Indiana's old "presumptive" sentencing scheme. *See Smylie v. State*, 823 N.E.2d 679 (Ind. 2005). At the time *Vela* was decided, any fact—other than the fact of a prior conviction or one admitted to by the defendant—that was used to enhance a sentence had to be

found beyond a reasonable doubt by the jury. *See Vela*, 832 N.E.2d at 613. Thus, what the *Vela* court held was that a defendant's act of admitting that the information in a PSIR was correct was not equivalent to admitting to the facts contained therein for purposes of *Blakely* and *Smylie*.[3]

[20] Shortly after *Vela* was decided, our General Assembly abandoned the old "presumptive" sentencing scheme and adopted the current "advisory" sentencing scheme, under which a trial court may sentence a defendant within the statutory sentencing range regardless of the presence of aggravating or mitigating facts. *See Anglemyer v. State*, 868 N.E.2d 482, 488 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (citing Ind. Code § 35-38-1-7.1(d)). Accordingly, the holding in *Vela*, which applied to the prior sentencing scheme, does not apply here.

## II. *Aggravating and Mitigating Circumstances*

[21] Orich also claims that the trial court abused its discretion in its identification of aggravating and mitigating circumstances. Sentencing decisions are entrusted to the sound discretion of the trial court, and we review the trial court's decision only for an abuse of this discretion. *Anglemyer*, 868 N.E.2d at 490. A trial court abuses its discretion when its sentencing decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable,

---

[3] This holding was not shared by other panels of this court. *See Sullivan v. State*, 836 N.E.2d 1031, 1036 (Ind. Ct. App. 2005); *Carmona v. State*, 827 N.E.2d 588, 596–97 (Ind. Ct. App. 2005) (both holding that a defendant's confirmation of the accuracy of a PSIR, when given an opportunity to contest it, amounts to an admission of information contained in the report for *Blakely* purposes).

probable, and actual deductions to be drawn therefrom." *Id.* There are several ways in which a trial court may abuse its discretion, including: failing to enter a sentencing statement at all, articulating reasons in a sentencing statement that are not supported by the record, omitting reasons in a sentencing statement that are clearly supported by the record, or articulating reasons that are improper as a matter of law. *Id.* at 490–91. However, the relative weight the trial court assigns to various aggravators or mitigators is no longer subject to review for an abuse of discretion. *Id.* at 491.

[22] Orich argues that the trial court abused its discretion by considering certain factors as aggravating. He first claims that there was insufficient evidence to support the following findings of the trial court in its sentencing order:

1. The defendant has had prior contact with the criminal justice system. The Court finds that in 1981, the defendant was arrested for "flashing" school children. Further, in 1991, the defendant was charged with Battery and Child Molesting his daughter. In 1993, the defendant was once again charged with Battery and Child Molesting of his daughter. The 1991 molesting resulted in a conviction for Battery. The Court finds that there [is] also uncharged conduct where the defendant was reported to the Department of Child Welfare Services for allegedly fondling his daughter in 1986;

2. The Court finds the defendant to have a pattern of inappropriate behavior with children, which reflects adversely on the defendant's character;

3. In several reports, the defendant admitted touching his daughter[.]

Appellant's App. p. 88. Contrary to Orich's claims, there was ample evidence to support these findings.

[23] Detective Maxwell testified to the following facts: her investigation of Orich revealed that he had been arrested in 1981 for exposing himself to school children; he was arrested and charged for battery and child molesting in 1991 and was convicted of battery; he was arrested again for child molesting his daughter in 1993 but found not guilty; and he had been investigated by child welfare services in 1986 for fondling his daughter and admitted to sexual misconduct with his daughter to the investigators. Thus, there was evidence before the court to support the trial court's findings.

[24] To the extent that Orich claims that the trial court could not consider these incidents as aggravating because they did not result in criminal convictions, he is mistaken. It is true that a history of arrests, without more, does not establish the historical fact that a defendant committed a criminal offense, and may not be properly considered as evidence of criminal history; however, an arrest record, especially a lengthy one, may indicate that a defendant has not been deterred from criminal activity even after extensive contact with the criminal justice system. *Vermillion v. State*, 978 N.E.2d 459, 468 (Ind. Ct. App. 2012) (citing *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005)). "Such information may be relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Id.*

Here, Orich was repeatedly arrested for sexual misconduct involving children. The trial court could properly consider this in determining Orich's sentence. *See id.*; *see also Carter v. State*, 711 N.E.2d 835, 841 (Ind. 1999) (holding that trial court did not abuse its discretion by considering evidence at sentencing hearing that defendant had attempted to molest his three-year-old sister a few weeks before murdering another child).

Orich also claims that the trial court erred by relying upon other aggravators that were not supported by the record. Specifically:

> 4. The defendant gave a statement wherein he said that the child pornography did not arouse his sexual desires and reported [the] same to Dr. Coyle. However, the detective testified that sexual toys were found in the defendant's home, which the Court presumes were used for their intended purposes;
>
> * * *
>
> 10. Several items searched for or downloaded by the defendant are heinous such as a six (6) year old boy being penetrated while crying. Some searches found on the defendant's computer were of "dead and abused children."
>
> 11. The Court finds that in Dr. Coyle's report, the defendant seriously under reported, what the Court assumes to be an addiction to pornography, to Dr. Coyle because he said part of the his [sic] total collection of various types of pornography were mostly "cartoonish" in nature, with some disrobed children in photographs who were engaging in various sexual acts that rarely involve "coitus," which is clearly a misrepresentation of the content that was found at the defendant's home.

Appellant's App. pp. 88–89.

[27] Orich claims that the finding No. 4 "is not aggravating at all and is in fact a non-sequitur." Appellant's Br. at 14. He contends that there was no evidence linking the child pornography found in his home, his sexual desires, or the sex toys found in his home. We think the trial court was well within its discretion, as the finder of fact at a sentencing hearing, to make a reasonable inference that Orich collected child pornography to arouse or satisfy his sexual desires. This is especially so given his prior history of sexual behavior with children, his disturbing internet searches, and his collection of sexual toys.

[28] Orich claims that finding No. 10 is "simply not supported by the record." *Id.* at 15. This is incorrect. Detective Maxwell specifically testified that images and videos found in Orich's possession included a video of a young child[4] being anally penetrated while crying. Tr. p. 29. She also testified that the search of Orich's computer revealed that he had used a search engine to look for terms including "3D incest sex, 3D kidnap little girl torture, 3D little girls dead abused." Tr. p. 26. Thus, the trial court's finding is well supported by the record.

[29] Despite this, Orich claims that the trial court "misinterpreted" these searches as searches for real-life depictions, whereas, he claims, they were merely searches

---

[4] According to Detective Maxwell, this child was a "unknown white female" approximately four to six years old. Tr. p. 29. The trial court's sentencing order states that this child was a "boy." Appellant's App. p. 89. This minor discrepancy is not grounds for reversal, as the fact remains that Orich was in possession of a video depicting a horrific sexual assault of a young child.

for virtual images. Again, we disagree. First, the fact that Orich searched for "3D images" does not necessarily mean that he was interested only in virtual images; it is well known that even real-life photographs and videos can be captured and viewed in 3D. Moreover, even assuming that Orich was interested only in virtual images, the fact that Orich searched for such vile terms is indicative of the depth of his depravity and his prurient interest in violent sex acts involving children. The trial court properly considered such circumstances as aggravating.

[30] Lastly, Orich claims that there was no evidence to support the trial court's conclusion that Orich had a pornography addiction. This argument borders on frivolous. Given both the staggering amount and disturbing nature of the pornography found in Orich's possession, the trial court could reasonably conclude that Orich had an obsession with or an addiction to pornography.

[31] Orich also claims that the trial court abused its discretion by failing to "properly consider" his mental health issues as a mitigating factor. Mental illness is not necessarily a significant mitigating factor. *Townsend v. State*, 45 N.E.3d 821, 831 (Ind. Ct. App. 2015) (citing *Ousley v. State*, 807 N.E.2d 758, 762 (Ind. Ct. App. 2004)), *trans. denied*. Instead, mental illness may be a mitigating factor under certain circumstances, such as when the evidence demonstrates longstanding mental health issues or when the jury finds the defendant mentally ill. *Id.* The mitigating weight to be given to a defendant's mental illness depends on several factors, including:

(1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime.

*Lopez v. State*, 869 N.E.2d 1254, 1259 (Ind. Ct. App. 2007) (citing *Biehl v. State,* 738 N.E.2d 337, 340 (Ind. Ct. App. 2000), *trans. denied*), *trans. denied*.

[32] Here, there was some evidence that Orich had suffered a traumatic brain injury and that he suffered from mental health issues. The trial court specifically noted that Orich had attempted suicide in the past, and Dr. Coyle testified that Orich had a hoarding disorder. The trial court recognized these facts as mitigating but did not assign them significant mitigating weight. Specifically, the trial court stated that imprisonment would be a hardship on Orich because he has suffered traumatic "brain injury and has attempted suicide several times in the past[.]" Appellant's App. p. 88. The trial court was also not persuaded by Dr. Coyle's testimony, noting that Orich had significantly underreported the nature and quantity of his child pornography collection:

> You have been seeking counseling with Dr. Coyle. Although I'm sure it is helpful, I'm not sure that it was geared specifically to the issues that were brought forth today. On Page 3 [of his report], Dr. Coyle says that you admit you had child pornography as total – as a part of your total collection of various types of porn, but said it was mostly cartoonish in nature with some disrobed children in photographs that were engaged in various sex acts that rarely involved coitus. The evidence today presented by the State would belie that. So I don't know that Dr. Coyle had an

accurate depiction of why it is that you should have been there, but you did seek treatment.

Tr. pp. 85–86.

[33] Accordingly, this is not a case where the trial court wholly overlooked the defendant's mental illness. Instead, the trial court recognized Orich's mental health issues but assigned them little mitigating weight. The trial court also considered Dr. Coyle's testimony but gave it little weight because it was based on Orich's own reports of his behavior, in which he seriously underreported the nature and scope of his child pornography collection. On appeal, we may not re-assess the trial court's decision to assign this mitigator little weight. *See Anglemyer*, 868 N.E.2d at 491. We therefore cannot say that the trial court abused its discretion by failing to consider Orich's mental health issues as a significant mitigating factor.

## Conclusion

[34] The trial court did not abuse its discretion by overruling Orich's objection to the inclusion of the charging information and probable cause affidavit in the presentence investigation report. Nor did the trial court abuse its discretion in its identification of aggravating and mitigating factors. Accordingly, we affirm the judgment of the trial court.

[35] Affirmed.

Kirsch, J., and Bailey, J., concur.