Orlando **DILLARD**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 49A04–0408–CR–465.

Court of Appeals of Indiana.

May 18, 2005.

Transfer Denied July 26, 2005.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Orlando Dillard appeals his conviction of Robbery [1] and Possession of a Firearm by a Serious Violent Felon,[2] both class B felonies. Dillard presents the following restated issues for review:

1. Must the convictions be reversed because of an impermissibly suggestive photo array?

2. Did the trial court err in sentencing Dillard?

We affirm.

The facts favorable to the convictions are that at approximately 8:45 p.m. on August 16, 2003, Rebekah Blane was working at the Kentucky Fried Chicken restaurant located at 2801 West 16th Street in Indianapolis. At about that time, a man unknown to Blane appeared on foot at the drive-up window and complained he found a roach in food he had purchased there earlier that day. He demanded a refund of the purchase price. Blane told him he would have to bring the contaminated food to the store and speak with the manager, who could either refund his money or replace the food. The man informed Blane "that wouldn't work for him" and asked Blane to give him the money in the cash register. *Transcript* at 29. At that point the man pulled a gun out of his waistband and showed it to Blane "so [she] would know [she] really wouldn't have too much of a choice but to give him the money."

*Id.* at 30. Blane observed the gun was silver with a wooden handle. Blane retrieved the keys to the cash register and opened it. The robber reached through the drive-up window, grabbed the money out of the cash register, and fled the scene on foot. It was later determined the man had taken $373. Blane immediately called 911, and police arrived at the scene within ten minutes of the robbery. Blane described the man and what he was wearing, and provided police with the videotape from a security camera in the restaurant that had filmed the robbery.

Jeffrey Patterson, a detective with the Indianapolis Police Department, was among the officers who responded to the 911 phone call, and he led the investigation. Blane described the perpetrator as a black male, bald, approximately 5 feet, 9 inches tall, weighing 175 pounds, with a mustache, and wearing a blue shirt and jeans. Blane informed Detective Patterson she would be able to identify the robber if she saw him again. During Detective Patterson's subsequent investigation, he developed Dillard as a suspect. Detective Patterson prepared a photo array that included Dillard's photo. He showed the array to Blane, and Blane immediately identified Dillard's photo as that of the robber. Detective Patterson asked Blane if she was sure of her identification, and she responded that she was "absolutely sure." *Id.* at 71.

Dillard was charged with robbery, carrying a handgun without a license, and possession of a handgun by a serious violent felon. He was convicted on all counts following a bench trial. The trial court merged the conviction for carrying a hand-

---

1. Ind.Code Ann. § 35–42–5–1 (West, PREMISE through 2004 2nd Regular Sess.).

2. Ind.Code Ann. § 35–47–4–5 (West, PREMISE through 2004 2nd Regular Sess.).

gun without a license into the other firearm conviction. Citing Dillard's criminal history, the trial court sentenced Dillard to an enhanced sentence of fifteen years for each of the B felony convictions, with those sentences to run concurrently. In addition, the trial court determined that the resulting fifteen-year executed sentence should run consecutive to a four-year sentence imposed for a nearly contemporaneous conviction received in Marion Superior Court No. 2 under a different cause number.

### 1.

Dillard contends the evidence was insufficient to support the convictions. Dillard's argument on this point is best summed up in the following statement: "[I]n this case, the only evidence linking Dillard to the robbery was Blaine's [sic] identification of him through a photographic array and through her in-court testimony." *Appellant's Appendix* at 9. Dillard specifically notes Blane testified that of the men depicted in the photo array, Dillard had the thinnest mustache. He then directs our attention to the portion of Blane's cross-examination where she is asked, "So, you could eliminate 5 of the 6 photos in this photo array just by the fact that those pictures do not have the proper type of mustache?" *Transcript* at 50. She responded, "Yes." *Id.* From this, Dillard argues Blane's identification of Dillard as the robber was tainted by an impermissibly suggestive photo array.

The identification of a defendant must comport with due process standards. *Allen v. State,* 813 N.E.2d 349 (Ind.Ct.App. 2004), *trans. denied.* If an out-of-court identification procedure was unduly suggestive, as Dillard contends is the case here, then the testimony relating to it is inadmissible. *Id.* In assessing whether an identification procedure ran afoul of due process standards, we must determine whether, under the totality of the circumstances, the identification process was conducted in such a manner that it created a substantial likelihood of irreparable misidentification. *Id.* "Our supreme court has held that a photo array is impermissibly suggestive only where the array is accompanied by verbal communications or the photographs in the display include graphic characteristics that distinguish and emphasize the defendant's photograph in an unusually suggestive manner." *Id.* at 360. We are mindful, however, that our supreme court long ago determined law enforcement officers are not required to "perform the improbable if not impossible task of finding four or five other people who are virtual twins to the defendant" when compiling a photo array. *Glotzbach v. State,* 783 N.E.2d 1221, 1224 (Ind.Ct. App.2003) (quoting *Pierce v. State,* 267 Ind. 240, 246, 369 N.E.2d 617, 620 (1977)).

In the instant case, all six of the photographs in the array depict African–American males who appear to be roughly the same age, and have the same or similar expressions on their faces. All have short haircuts worn in the same or similar styles. All have closely cropped mustaches and goatees. All of the subjects in the photographs are shown from the front, with only the head and neck visible. The backgrounds are substantially similar as well. We think Dillard considerably overstates the extent to which his mustache differs from that of the other subjects. Detective Patterson, who prepared the array, testified that Blane told him only that the perpetrator had a mustache. After Patterson developed Dillard as a suspect and obtained his photograph, he sought five photographs of other subjects who were substantially similar in appearance to Dillard. It appears to us that he accomplished that goal. With respect to the feature in question, the mustaches of all

six men in the array can fairly be described as thin, and certainly similar in appearance.

In short, Dillard's photograph is not distinguishable from the others with respect to clothing, hairstyle, or any other physical characteristics that cause him to stand out in the array. *See J.Y. v. State,* 816 N.E.2d 909 (Ind.Ct.App.2004), *trans. denied.* Thus, Dillard "does not stand out so strikingly in his characteristics that he virtually is alone with respect to identifying features." *Farrell v. State,* 622 N.E.2d 488, 494 (Ind.1993).

Considering the totality of the circumstances, including Blane's description of the robber and her level of certainty in selecting Dillard's photo from the array, the photographic array was not impermissibly suggestive. Because the validity of Blane's identification of Dillard is the linchpin of his challenge to the sufficiency of the evidence, and we have rejected that contention, we conclude the evidence was sufficient to support the convictions.

### 2.

The trial court imposed enhanced, fifteen-year sentences for each of Dillard's B-felony convictions. Dillard contends the trial erred in doing so. Dillard also contends the trial court erred in imposing consecutive sentences.

 Sentencing decisions are committed to the trial court's sound discretion and will be reversed only upon a showing of a manifest abuse of that discretion. *Payton v. State,* 818 N.E.2d 493 (Ind.Ct.App.2004), *trans. denied.* Our General Assembly has prescribed presumptive sentences for each crime, granting limited discretion to the sentencing court to enhance a sentence to reflect aggravating circumstances or reduce it to reflect mitigating circumstances. *Merlington v. State,* 814 N.E.2d 269 (Ind. 2004). In this case, the applicable statute

provides, "A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances[.]" Ind.Code Ann. § 35–50–2–5 (West, PREMISE through 2004 2nd Regular Sess.). If the trial court deviates from the presumptive sentence, it must identify all significant mitigating and aggravating circumstances upon which it relied, state specifically why each circumstance was determined to be mitigating or aggravating, and articulate its evaluation and balancing of the circumstances. *Merlington v. State,* 814 N.E.2d 269. When a defendant challenges a sentence more severe than the presumptive, we will examine the record to insure that the sentencing court explained its reasons for selecting the sentence it imposed. *Id.*

The court explained the imposition of an enhanced sentence as follows:

The Court does find one aggravating circumstance in this case, and that is the defendant's prior criminal history. Those portions of the prior criminal history that have resulted in convictions are what the Court considered today. Therefore, what I have considered is a 1992 burglary conviction, which was a B Felony conviction. And I also note from the information in the Presentence Report that this conviction resulted in some suspended time and probationary time in which the probation was revoked.

The Court also finds the operating a vehicle while intoxicated conviction in 1994 to be one of the considerations making up this aggravating circumstance, as well as the 1997 battery conviction, and the 1999 driving while suspended conviction. In addition, the 2004 C Felony robbery conviction [sic].

The Court is concerned by the prior criminal history in that it does involve now two felony convictions for taking property from other people. And then the C Felony conviction was not just a burglary, entering someone's home and taking property, but it was actually a situation of robbery, which, by the nature of a robbery charge, means that there was a confrontation with an individual in order to accomplish the crime. So that concerns the Court when you are here again for another robbery conviction.

*Transcript* at 141–42.

Dillard contends the evidence does not support the trial court's findings regarding his previous convictions, because he admitted only one of those convictions—the 1992 burglary conviction.[3] He contends the previous convictions listed in the presentence report were of no evidentiary value. Essentially, Dillard's argument is this: The enhanced sentences were based upon the aggravating factor of his criminal history, but there was proof (Dillard's stipulation) of only one of the several convictions listed by the sentencing court as comprising Dillard's criminal history. That lone conviction was not sufficient to support an enhancement based upon a criminal-history aggravator.

■ This case presents yet another permutation of the questions raised by *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which held that a trial court may not impose a sentence greater than the presumptive sentence unless one of the following conditions is present: (1) The facts supporting an enhanced sentence are found by a jury or admitted by the defendant; (2) the defendant has a criminal history; or (3) the defendant has waived his right to a jury at sentencing. In the instant case, the trial court enhanced Dillard's sentences based upon criminal history. By its own terms, and as consistently recognized by our cases analyzing *Blakely,* an enhancement based upon criminal history does not trigger a *Blakely* analysis. *See Berry v. State,* 819 N.E.2d 443, 2004 WL 2903687 (Ind.Ct. App.2004). Dillard contends the criminal-history exception to *Blakely* does not apply here.

■ Rules for the criminal history aggravator were developed before *Blakely* was decided. To summarize, a mere conclusory statement that the defendant has a criminal history will not suffice. Rather, when criminal history is cited as an aggravating circumstance supporting an enhanced sentence, the trial court must recite the incidents comprising the criminal history. *Mayes v. State,* 744 N.E.2d 390 (Ind.2001). Here, the trial court set out Dillard's criminal history with specificity. In discussing Dillard's prior convictions, the trial court utilized the portion of Dillard's presentence investigation report that detailed his criminal history, which included both charges that led to convictions, and those that did not. The trial court clarified it was relying only upon those charges that culminated in convictions, and then listed those convictions individually.

As indicated above, Dillard contends there was no evidence in the record to prove the existence of the convictions cited by the trial court in that discussion. This contention, in turn, is based upon two arguments. First, the State did not provide verifying documentation relating to any of those convictions. Those convictions *were*

---

**3.** We note he stipulated to the existence of that conviction at the outset of trial, no doubt for strategic reasons. A prior conviction of a violent felony, such as the 1992 burglary conviction, within the preceding fifteen years was an element of the offense of possessing a handgun while a serious violent felon.

listed, however, in Dillard's presentence investigation report. Is that enough? Our supreme court has indicated that the presentence report may constitute an adequate evidentiary foundation to support specific findings relative to criminal history at sentencing. *See Mayes v. State,* 744 N.E.2d 390. In presumed response to this, Dillard's second point is that he did not stipulate to the presentence investigation report's accuracy. Rather, his attorney indicated Dillard, "with regard to the information in the PSI, is going to assert his right against self-incrimination and not comment on the PSI." *Transcript* at 128. Therefore, we are presented with the following question: What is the effect of a defendant invoking the Fifth Amendment and refusing to either confirm or dispute factual information contained in a presentence investigation report?

■■■■ There is only one purpose for filing a presentence investigation report, viz., to provide information to the court for use at individualized sentencing. *Timberlake v. State,* 690 N.E.2d 243 (Ind.1997), *cert. denied,* 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). The sentencing court evaluates that information to determine the existence of aggravating and mitigating factors. *Id.* Thus, it goes without saying that the information contained in the report must be accurate. *Yates v. State,* 429 N.E.2d 992 (Ind.Ct.App.1982). The State is not required, however, to introduce certified copies of prior convictions to prove those convictions exist. *Myers v. State,* 454 N.E.2d 861 (Ind.1983). Having said that, we observe that because

of its importance in sentencing, the relevant inquiry regarding pre-sentence reports usually concerns their accuracy. To that end, we are generally concerned only with insuring that the defendant had an *opportunity* to examine the report and challenge any inaccuracies contained therein, pursuant to I.C. § 35–38–1–12(b).[4] *See Idle v. State,* 587 N.E.2d 712 (Ind.Ct. App.1992), *trans. denied.*

■■■■ Dillard does not deny he had the opportunity to review the report and failed to make any corrections. We understand that neither did he acknowledge the report to be accurate, but that is beside the point. We reiterate that our primary concern is that the report was accurate. The information contained therein need not be documented, verified, or proven in any particular way, such as by attaching birth certificates, church memberships, or abstracts of judgment of conviction to the presentence investigation report. We are left to conclude that the information contained in the report is presumed accurate unless the defendant challenges it in some respect. Indeed, this highlights the importance of affording the defendant a chance to review the report and register challenges regarding its accuracy.[5] Heretofore, this court has consistently held that, having been afforded the opportunity to review the report, if the defendant fails to register an objection to the information contained therein, any such objection is waived for appellate review. *See, e.g., Ryle v. State,* 819 N.E.2d 119 (Ind.Ct.App.2004); *see also Howard v. State,* 481 N.E.2d 1315, 1319 (Ind.1985) ("[t]here is no showing by

---

4. The "court shall furnish the factual contents of the presentence investigation or a copy of the presentence report sufficiently in advance of sentencing so that the defendant will be afforded a fair opportunity to controvert the material included."

5. Indeed, our supreme court has held that the failure to allow the defendant the opportunity to review the presentence investigation report before sentencing requires a remand for re-sentencing where the trial court relied upon a portion of the report in sentencing. This is so even if the defendant does not allege the information provided in the presentence investigation report was untrue. *See Stanley v. State,* 273 Ind. 13, 401 N.E.2d 689 (1980).

Appellant that he was not furnished a copy of the presentence report prior to his sentencing, that he objected in any way to its contents or that he was not given an opportunity to explain any item therein stated"). This is so even where the defendant refuses to read the report. *See, e.g., Johnson v. State*, 699 N.E.2d 746 (Ind.Ct.App. 1998). It is enough that the defendant had the *chance* to review the report. Whether the defendant chooses to take advantage of the opportunity to review the report makes no difference with respect to preserving the right to appeal the accuracy of the information contained in the presentence investigation report.

We hold today that the same is true of the decision to dispute aspects of the report. That is, it does not matter why a defendant chooses to remain silent when offered the chance to dispute the accuracy of a presentence investigation report he has had the opportunity to review: the knowing failure to object waives the issue of the report's accuracy for appellate review. We note in this regard that Dillard does not allege there actually were any errors in the criminal history section of his presentence investigation report, but only that there was no competent evidence to support those assertions. We reiterate that the State's duty to "prove" factual assertions in a more traditional manner is not triggered until the defendant, given the opportunity, disputes the accuracy of those facts. *See, e.g., Carmona v. State*, No. 32A05–0406–CR–00322, 827 N.E.2d 588, 2005 WL 1163285 (Ind.Ct.App. May 18, 2005). Dillard declined the opportunity, and therefore waived the issue.

Judgment affirmed.

ROBB and BAILEY, JJ., concur.