Thomas STOKES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0410–CR–824.

Court of Appeals of Indiana.

June 14, 2005.

Transfer Denied Aug. 25, 2005.

Ruth Johnson, Marion County Public Defender Agency, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, J.

### Case Summary

Thomas Stokes appeals his conviction and sentence for carrying a handgun without a license. The trial court did not err in admitting an unsolicited statement that Stokes made to his sister because the statement was not a product of unreasonable police force. Additionally, we find that the evidence is sufficient to support Stokes' conviction because an officer testified that he observed a handgun fall from Stokes' waistband. Because prior convictions are exempted from *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied*, the trial court did not violate Stokes' Sixth Amendment rights by determining his criminal history—as borne out in a pre-sentence investigation report ("PSI")—was an aggravating circumstance that supported an enhancement of his sentence even though Stokes refused to admit to the convictions delineated in the PSI. Moreover, because the rules of evidence do not apply to sentencing proceedings that are conducted by a judge sitting without a jury, a judge may use a PSI to discern a defendant's criminal history although a PSI is hearsay. Finally, we find that *Shepard v. United States*, 544 U.S. ——, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), does not preclude the use of a PSI by a sentencing court. Consequently, we affirm.

### Facts and Procedural History

In March 2004, Marcy Chapman, the property manager for Caravelle Commons,[1] called 911 because she observed four or five people standing around an automobile exchanging something and suspected that there was a drug deal taking place. In response to the 911 call, Indianapolis Police Officer Christopher Wuensch arrived on scene in full uniform and a marked police car. As he approached the group, the individuals began to disperse. He asked the individuals to stop so that he could speak with them. Stokes, who was wearing a white shirt and khaki shorts, began to walk toward Officer Wuensch. Stokes stopped abruptly—at which time Officer Wuensch observed a black, medium-sized handgun drop from Stokes' waistband—and then fled. Officer Wuensch pursued Stokes on foot, leaving the gun on the street because it could not be "made safe" while he pursued Stokes. Tr. p. 133. Meanwhile, Chapman observed a man in a white hat, black shirt, and white shorts running away from the scene with a black handgun.

Officer James Rusk joined Officer Wuensch in the foot pursuit of Stokes. Because Stokes continued to ignore the officers' commands to stop, Officer Rusk tased[2] Stokes, causing him to fall to the

---

1. Caravelle Commons is an apartment complex in Indianapolis, Indiana.

2. According to the TASER International website, "A TASER device is a type of non-lethal weapon that with its Electro–Muscular Disruption (EMD) Technology causes an uncontrollable contraction of the muscle tissue, allowing the ... TASER to physically debilitate a target regardless of pain tolerance or mental focus." TASER International, TASER M26 Product Brochure (2002), *available at* http://www.taser.com /documents/m26.pdf

(last accessed May 19, 2005). The TASER International website further explains:

> TASER devices utilize compressed nitrogen to project two small probes up to 15, 21 or 25 feet (21 and 25 foot cartridges sold to law enforcement, military and aviation security agencies only) at a speed of over 160 feet per second. These probes are connected to the TASER device by insulated wire. An electrical signal is transmitted through the wires to where the probes make contact with the body or clothing, resulting in an immediate loss of the person's neuromuscular control and the ability to perform coor-

ground. Officer Rusk then attempted to handcuff Stokes. Stokes, however, resisted Officer Rusk's efforts and attempted to rise to his feet. Officer Rusk tased Stokes a second time, which allowed him to secure Stokes in handcuffs. After Officer Keith Jennings arrived as back-up, Officer Wuensch unsuccessfully attempted to locate the gun he had observed fall from Stokes' waistband before the pursuit. Approximately ten minutes after Stokes had last been tased, Stokes asked his sister who had since arrived on the scene, "Did they find the gun?" *Id.* at 190. Both Officer Rusk and Officer Jennings overheard this statement. The police did not recover the handgun.

The State charged Stokes with Carrying a Handgun Without a License as a Class C felony[3] and Resisting Law Enforcement as a Class A misdemeanor.[4] Before trial, Stokes moved to suppress his statement, "Did they find the gun?" Stokes claimed that his statement should be suppressed because the police officers had tased him before he made it. The trial court denied the motion to suppress, and the statement was subsequently admitted into evidence at trial. A jury convicted Stokes as charged.

At Stokes' sentencing hearing, the trial court found Stokes' criminal history to be an aggravating circumstance and sentenced Stokes to eight years in the Department of Correction, five years of which were ordered executed.[5] Stokes now appeals.

### Discussion and Decision

Stokes raises three issues, which we reorder and restate as follows. First, Stokes argues that the trial court erroneously admitted his statement,[6] "Did they find the gun?," because this statement was made after he had been tased by police officers. Second, he claims that the evidence is insufficient to support his conviction for carrying a handgun without a license. Third, he alleges that the trial court denied him his Sixth Amendment right, as articulated in *Blakely,* to have a jury determine the facts used to enhance his sentence. We address each issue in turn.

### I. Admission of Statement

■ Stokes asserts that the trial court erroneously admitted his statement "Did they find the gun?" because it was the product of excessive force. A trial court has broad discretion in ruling on the admissibility of evidence. *Packer v. State,* 800 N.E.2d 574, 578 (Ind.Ct.App.2003),

---

dinated action for the duration of the impulse.
TASER International, Facts, Q & A (2004), *available at* http://www.taser.com /facts/ qa.htm (last accessed May 19, 2005).

3. Ind.Code § 35–47–2–1; Ind.Code § 35–47–2–23(c). This offense was elevated from a Class A misdemeanor because Stokes had previously been convicted of a felony within fifteen years before the date of his current offense. I.C. § 35–47–2–23(c)(2)(B).

4. Ind.Code § 35–44–3–3. Stokes does not challenge any aspect of this conviction.

5. We would remind counsel for Appellant of the obligation under Indiana Appellate Rule 46(A)(10) to include a copy of the sentencing

order in the Appellant's Brief. The Appellant included a copy of the sentencing order only in the Appellant's Appendix.

6. Stokes actually argues that the trial court should have suppressed his statement. However, given the procedural posture of this case—*i.e.,* Stokes did not appeal the trial court's denial of his motion to suppress and the statement was admitted over his objection at trial—the appropriate inquiry is whether the trial court erred by admitting the statement at trial. *See, e.g., Packer v. State,* 800 N.E.2d 574, 578 (Ind.Ct.App.2003), *trans. denied.*

*trans. denied.* We will only reverse a trial court's ruling on the admissibility of evidence when the trial court has abused its discretion. *Id.* A trial court abuses its discretion when it makes a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

■ Stokes suggests that his question to his sister should not have been admitted because it came after the police had used a TASER to subdue him. While it is true that the use of unauthorized force by interrogating officers can result in a confession being deemed inadmissible, *see, e.g., Pierce v. State,* 761 N.E.2d 821, 823–24 (Ind. 2002), here there was simply no interrogation. Rather, Stokes inquired of his sister, "Did they find the gun?" The police merely overheard Stokes as he questioned his sister; they did not use force to extract these words from Stokes. Stated otherwise, Stokes' questioning of his sister was not a product of being subdued by the police.[7] Because Stokes offers no authority for the proposition that the force necessary to control an intractable suspect should render any subsequent statement involuntary, we cannot say that the trial court abused its discretion by admitting his statement. *See Barany v. State,* 658 N.E.2d 60, 66 (Ind.1995).

## II. Sufficiency of the Evidence

■ Stokes next contends that the evidence in support of his conviction for carrying a handgun without a license is insufficient. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jones v. State,* 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence that supports the verdict and the reasonable inferences from that evidence to determine whether a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Id.* We will uphold the conviction if there is substantial evidence of probative value to support the conviction. *Id.*

■ To obtain a conviction for Carrying a Handgun Without a License as a Class C felony, the State was required to prove that Stokes carried a handgun on or about his person in a place outside of his dwelling, property, or fixed place of business and that he had been convicted of a felony within the last fifteen years. Ind.Code § 35–47–2–1; Ind.Code § 35–47–2–23(c)(2)(B); *Sowell v. State,* 784 N.E.2d 980, 984 (Ind.Ct.App.2003). Stokes claims only that the State failed to establish that he possessed a handgun. Officer Wuensch, however, testified that he saw a black handgun fall from Stokes' waistband. The testimony of a single eyewitness to a crime is sufficient to sustain a conviction. *See Green v. State,* 756 N.E.2d 496, 497 (Ind.2001). Nonetheless, Stokes argues that this evidence is insufficient to support his conviction because Officer Wuensch did not include the same details about observing a gun fall from Stokes' waistband in his arrest report. Stokes cross-examined Officer Wuensch regarding the lack of specificity in his report, and the report was admitted into evidence. The jury determined that Stokes carried a handgun without a license. We will not invade the province of the jury and reweigh evidence or judge witness credibility. *See Gray v. State,* 786 N.E.2d 804, 807–08 (Ind.Ct.App. 2003). Officer Wuensch's testimony is suf-

---

7. Because we find that Stokes' statement was not the product of the force used by the police, we need not reach Stokes' Fourth Amendment and Article I, Section 11 arguments that the means used by the police in seizing him was unreasonable and therefore his statement should not have been admitted at trial.

ficient to prove beyond a reasonable doubt that Stokes did carry a handgun on his person.

## III. Sentencing

Last, Stokes challenges his enhanced sentence under *Blakely*. In attacking his sentence, Stokes asserts that the trial court improperly relied solely on the PSI, which Stokes classifies as hearsay, to determine whether his criminal history constituted an aggravating circumstance because he did not admit to the contents of the report and instead invoked his Fifth Amendment right against self-incrimination. Additionally, Stokes claims that the trial court should not have considered his juvenile adjudications when determining whether Stokes' sentence should be enhanced due to his criminal history.

■ After the jury returned a guilty verdict, the trial court ordered the probation department to compile a PSI. *See* Ind.Code § 35–38–1–8(a) ("Except as provided in subsection (c), a defendant convicted of a felony may not be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court."). At his sentencing hearing, Stokes objected to the trial court's use of the PSI claiming that it was hearsay. It is firmly established, however, that hearsay is admissible at sentencing hearings. *See* Ind. Evidence Rule 101(c)(2) ("The rules, other than those with respect to privileges do not apply in the following situations ... proceedings relating to ... sentencing...."); *Dumas v.*

*State*, 803 N.E.2d 1113, 1121 (Ind.2004) ("The rationale for exempting certain proceedings, including sentencing, from the rules of evidence is to provide the trial judge with the widest range of relevant information in reaching an informed decision.").[8] Thus, Stokes' hearsay challenge fails.

Our inquiry does not end there, however, because Stokes also argues that the United States Supreme Court's recent opinion in *Shepard v. United States*, 544 U.S. ——, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), precludes the use of the criminal history information delineated in a PSI to enhance a sentence. *Shepard* narrowly held that a trial court may not look to police reports or complaint applications of a prior plea to determine if the prior conviction qualified as a predicate felony for enhancement purposes under the Armed Career Criminal Act ("ACCA")[9] but concluded that a trial court may examine the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented. *See also Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (determining that a court may look to the indictment or information and the jury instructions of a prior conviction to determine if it can be used for enhancement purposes under the ACCA).

The underlying concern at issue before the Supreme Court in *Shepard* was judicial

---

8. While we agree that this general rule could change where aggravating circumstances other than those exempted from *Blakely* are determined by a jury, *see, e.g., Dumas*, 803 N.E.2d at 1121 ("[W]ith the exception of grand jury proceedings, the proceedings in which the rules of evidence do not apply involve those where evidence is presented to a trial judge alone without the intervention of a

jury."), we simply are not presented with that issue in this case because the trial judge was sitting without a jury.

9. The Armed Career Criminal Act, 18 U.S.C. § 924(e), is the federal statute that serves as a vehicle for enhancing the sentence of a felon who has acquired three prior convictions for violent felonies or drug offenses.

fact-finding of circumstances surrounding a conviction.[10] Enhancement under the ACCA depends upon how a prior crime was committed as only certain crimes qualify as predicate felonies.[11] We are not faced with a similar situation here. Stated otherwise, here there is not a concern as to *how* an offense underlying a prior conviction was committed; rather, the concern is *if* the defendant has any prior convictions. Moreover, the *Shepard* holding was narrowly drawn so as to apply only to the ACCA and the issue of what documents could be admitted to establish if a prior conviction qualified as an ACCA predicate felony. Therefore, we do not find *Shepard* to be controlling.

Additionally, at his sentencing hearing Stokes invoked his Fifth Amendment right against self-incrimination:

> Judge, we've seen the Pre–Sentence but at this point, uh, Mr. Stokes is going to assert his right against self incrimination and make no comment upon the Pre–Sentence Investigation, ask the Court not to consider any information in it. With regard to criminal history, it's a hearsay document and this alone is not sufficient to prove beyond a reasonable doubt that Mr. Stokes has any prior convictions. So, that's our position on the Pre–Sentence, Judge.

Tr. p. 266–67. This Court recently addressed a similar argument in *Dillard v. State*, 827 N.E.2d 570 (Ind.Ct.App.2005). In *Dillard*—based on its review of a PSI—the trial court determined that Dillard's sentence should be enhanced. Dillard argued that the enhancement of his sentence based on his criminal history as borne out in the PSI was not sufficient to prove the existence of his prior convictions, especially since he did not stipulate to the accuracy of the PSI and instead invoked his Fifth Amendment right against self-incrimination.

*Dillard* explained:

> There is only one purpose for filing a presentence investigation report, *viz.*, to provide information to the court for use at individualized sentencing. *Timberlake v. State*, 690 N.E.2d 243 (Ind.1997), *cert. denied*, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). The sentencing court evaluates that information to determine the existence of aggravating and mitigating factors. *Id.* Thus, it

---

**10.** In the context of *Shepard*, Stokes merely argues that "*Shepard* restricts the documents that can be used to prove whether a prior conviction satisfies the requirements of the enhancement statute." Appellant's Reply Br. p. 2. He does not argue that *Shepard* requires a jury determination of the prior criminal history aggravator. Indeed, *Shepard* left open the question of the continued viability of the prior conviction exception as first articulated in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and incorporated into *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Justice Souter's opinion of the court alludes to but does not speak directly to the issue; Justice Thomas' concurring opinion recognizes "a majority of the Court now recognizes that *Almendarez–Torres*

was wrongly decided," *Shepard*, 125 S.Ct. at 1264 (citing *Almendarez–Torres*, 523 U.S. at 248–49, 118 S.Ct. 1219 (SCALIA, J., joined by STEVENS, SOUTER, and GINSBURG, JJ., dissenting); *Apprendi*, 530 U.S. at 520–21, 120 S.Ct. 2348 (THOMAS, J., concurring)); and Justice O'Connor's dissenting opinion concludes, "[W]hatever the merits of the *Apprendi* doctrine, that doctrine does not currently bear on, and should not be extended to bear on, determinations of a defendant's past crimes, like the ACCA predicates at issue in *Shepard*'s case." *Id.* at 1270.

**11.** Specifically, the dispute in *Shepard* revolved around whether the prior convictions for burglary involved a dwelling, which constitutes a predicate felony under the ACCA, or a boat, which does not constitute a predicate felony under the ACCA.

goes without saying that the information contained in the report must be accurate. *Yates v. State,* 429 N.E.2d 992 (Ind. Ct.App.1982). The State is not required, however, to introduce certified copies of prior convictions to prove those convictions exist. *Myers v. State,* 454 N.E.2d 861 (Ind.1983).[12] Having said that, we observe that because of its importance in sentencing, the relevant inquiry regarding pre-sentence reports usually concerns their accuracy. To that end, we are generally concerned only with insuring that the defendant had an *opportunity* to examine the report and challenge any inaccuracies contained therein, pursuant to I.C. § 35–38–1–12(b). *See Idle v. State,* 587 N.E.2d 712 (Ind.Ct.App.1992), *trans. denied.*

*Dillard,* 827 N.E.2d at 576 (emphasis in original). We continued by stating, "We are left to conclude that the information contained in the report is presumed accurate unless the defendant challenges it in some respect." *Id.* Moreover, we noted that "if the defendant fails to register an objection to the information contained therein, any such objection is waived for appellate review." *Id.; see also Howard v. State,* 481 N.E.2d 1315, 1319 (Ind.1985) ("There is no showing by Appellant that he was not furnished a copy of the presentence report prior to sentencing, that he objected in any way to its contents or that he was not given an opportunity to explain any item therein stated."). Ultimately, we held, "[I]t does not matter why a defendant chooses to remain silent when offered the chance to dispute the accuracy of a presentence investigation report he has had the opportunity to review: the knowing failure to object waives the issue of the report's accuracy for appellate review." *Dillard,* 827 N.E.2d at 577.

■ Likewise, in this case we find that Stokes has waived appellate review of the accuracy of the PSI. Stokes confirmed that he read the PSI at his sentencing hearing, but he did not comment on its accuracy and instead invoked his Fifth Amendment right against self-incrimination. Even on appeal he does not dispute the accuracy of the PSI; he merely argues that "absent a jury determination of the fact of prior convictions [Stokes'] enhanced sentence violates his Sixth Amendment right to a trial by jury." Appellant's Br. p. 10. These convictions, however, have already been proven beyond a reasonable doubt and are thus exempt from the *Apprendi* rule as explained in *Blakely. Moon v. State,* 823 N.E.2d 710, 717 (Ind.Ct.App.2005), *reh'g denied.* Consequently, we find Stokes' argument that the fact of his prior convictions had to be determined by a jury to be without merit.

Stokes finally argues that the trial court should not have relied on his juvenile adjudications in considering his criminal history. A panel of this Court recently examined whether juvenile adjudications were exempt from *Blakely. See Ryle v. State,* 819 N.E.2d 119 (Ind.Ct.App.2004), *trans. granted.*[13] After examining authority from

---

**12.** Stokes also argues that the State has to prove prior convictions to a jury by producing certified copies of convictions as is done in habitual offender proceedings. Our supreme court opined in *Myers* that the State need not do so. *Myers,* 454 N.E.2d at 865. We see no reason to revisit this holding.

**13.** On May 6, 2005, our supreme court granted transfer in *Ryle.* The Order granting transfer stated:

The parties have thirty days to file supplemental briefs on the following two questions: In light of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Smylie v. State,* 823 N.E.2d 679 (Ind.2005), are the facts that Appellant (1) had been previously adjudicated a delinquent treated as a prior conviction and (2) was on probation at the time of the offense treated as derivative of Appellant's criminal

various jurisdictions, *Ryle* concluded that juvenile adjudications are "prior convictions" under *Apprendi*. *Id.* at 123. Our supreme court granted transfer on this precise issue. We need not attempt to prognosticate our supreme court's ruling on this issue, however, because absent consideration of his juvenile adjudications, Stokes' criminal history was still quite extensive. Indeed, Stokes had acquired at least nine misdemeanor convictions and at least three felony convictions by the time he was sentenced for the instant offenses,[14]

and he was only twenty-three years old at the time of his sentencing. Therefore, we find no error in Stokes' enhanced sentence.

Affirmed.

SHARPNACK, J., and MAY, J., concur.

history under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), such that the facts need not be found by a jury before the trial court can used them to enhance Appellant's murder sentence beyond the presumptive term?
*Ryle v. State*, No. 49S02–0505–CR–207 (Ind. May 6, 2005). Oral argument is scheduled for June 21, 2005, at 9:00 a.m. *Ryle v. State*, No. 49S02–0505–CR–207 (Ind. May 13, 2005).

**14.** Stokes, at the time of sentencing, had accumulated thirteen convictions. It is not entirely clear from the record whether he had accumulated nine or ten misdemeanors because it appears as if one of his felony convictions may have been reduced to a Class A misdemeanor under alternative misdemeanor sentencing. *See* Ind.Code § 35–50–2–7(b).