## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2018, 7:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Conor P. Scott,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 31, 2018

Court of Appeals Case No.
18A-CR-185

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1708-F3-20

**Altice, Judge**

# Case Summary

[1] Seventeen-year-old Conor Scott robbed a convenience store employee at gunpoint, was charged as an adult, pled guilty to armed robbery as a Level 3 felony and pointing a firearm as a Level 6 felony, and was sentenced to an aggregate term of nine years in the Indiana Department of Correction (DOC) with five and one-half years executed and three and one-half years of supervised probation. On appeal, Scott raises the following issues:

    1.    Whether the trial court abused its discretion by identifying a jail altercation as an aggravating circumstance; and

    2.    Whether his nine-year sentence is inappropriate.

[2] We affirm.

# Facts & Procedural History

[3] The facts, taken from the probable cause affidavit, are that early morning, on August 16, 2017, Scott rode to a convenience store with an acquaintance, Kevin Latour. They placed bandanas over their faces and approached the entrance to the store. However, when they saw a bystander looking at them, they removed their bandanas and walked away.

[4] That same morning, Scott and Latour went to another convenience store, located in Lafayette, Indiana, and entered the store, wearing bandanas over their faces. Once inside the store, Scott pointed a firearm at the employee and demanded money from the cash register. The employee gave money to Scott

and Latour, and the two left the store. They crashed the vehicle they were driving and then fled on foot. Scott, eventually, was located by the police and was taken into custody.

[5] On August 22, 2017, the State charged Scott with conspiracy to commit armed robbery, a Level 3 felony; armed robbery, a Level 3 felony; theft, a Class A misdemeanor; pointing a firearm, a Level 6 felony; and carrying a handgun without a license, a Class A misdemeanor. On November 29, 2017, Scott pled guilty to the armed robbery, the pointing a firearm, and the carrying a handgun without a license counts. The parties later amended the plea agreement to dismiss the carrying a handgun without a license count.

[6] At sentencing, the trial court identified the following mitigating circumstances: Scott pled guilty; he accepted responsibility for the crimes; he had strong support from his friends and family; he had a history of employment; and when he committed the crimes, he was "awfully young." *Transcript* at 47. The trial court also recognized Scott's commitment as a boy scout. The trial court found the following aggravating circumstances: Scott had a juvenile history; his prior juvenile probation had been revoked; he did not take advantage of his previous time on probation; and his previous attempts at rehabilitation were unsuccessful. The trial court also determined that Scott's involvement in a fight at the jail while in custody was an "aggravating" circumstance and that it "[counted] against [Scott's] character." *Id*. at 46.

At the conclusion of the sentencing hearing, the trial court sentenced Scott to nine years and to one year, respectively, for his convictions for armed robbery and pointing a firearm, with the sentences to be served concurrently. The trial court ordered five and one-half years executed in the DOC and three and one-half years suspended to supervised probation. Scott now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

## 1. Aggravating Circumstances

Scott first claims that the trial court abused its discretion by relying on a jail altercation as an aggravating circumstance. Scott's presentence investigation report (PSI) notes that Scott was involved in an altercation on October 2, 2017, at the Tippecanoe County Jail and, as a result, was placed in segregation. According to Scott, "[t]he only aspect of the record related to the jail altercation is a vague statement . . . [, and w]e can be no more certain that [he] provoked the altercation than that he was a blameless victim of a jail beating." *Appellant's Brief* at 8-9. Scott maintains that the record neither supports the trial court's consideration of the altercation as an aggravating circumstance nor the trial court's conclusion that Scott's involvement in the altercation reflected poorly on his character.

Sentencing decisions are within the sound discretion of the trial court and reviewed only for an abuse of that discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. An abuse of discretion

occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in sentencing by failing to enter a sentencing statement, entering a sentencing statement that explains reasons for imposing a sentence which the record does not support, omitting reasons that are clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.* at 490-91.

[10] Regarding a PSI, there is only one purpose for filing one, that is, to provide information to the court for use at individualized sentencing. *Timberlake v. State*, 690 N.E.2d 243, 266 (Ind. 1997). The sentencing court evaluates the information contained therein to determine the existence of aggravating and mitigating factors. *Id.* Thus, it goes without saying that the information contained in the report must be accurate. *Yates v. State*, 429 N.E.2d 992, 994 (Ind. Ct. App. 1982).

[11] We presume the information contained in the PSI is accurate unless the defendant challenges it in some respect. *Dillard v. State*, 827 N.E.2d 570, 576 (Ind. Ct. App. 2005), *trans. denied*. The knowing failure to object to the information contained in the PSI waives the issue of the report's accuracy for appellate review. *Id.*

[12] Scott argues that "[t]he record is devoid of any explanation for the [jail] altercation." *Appellant's Brief* at 9. The record reveals, however, that Scott had

an opportunity to review the PSI and request clarification or correction of the information regarding the altercation. Instead, he stated at sentencing that he had no corrections to the report, and he made no attempt to correct the PSI or offer any explanation regarding the altercation. Therefore, the issue is waived.

[13] Waiver notwithstanding, by not raising any factual challenges to the PSI report, Scott essentially admitted "to the accuracy of the facts contained therein." *Chupp v. State*, 830 N.E.2d 119, 126 n.12 (Ind. Ct. App. 2005). Because the trial court is entitled to accept the PSI report and make a decision based "on the facts recited therein[,]" we find that the trial court did not abuse its discretion by considering the jail altercation as an aggravating circumstance. *Butrum v. State*, 469 N.E.2d 1174, 1178 (Ind. 1984).

## 2. Inappropriate Sentence

[14] Scott next challenges the appropriateness of his nine-year sentence and argues that it should be reduced. Scott maintains that he "deserves a sentence below the advisory – or alternatively, a less onerous prison sentence [ – ]" because he was seventeen years old when he committed the crimes; no injuries resulted from his crimes; there is no indication that he took a substantial amount of money from the store employee; he pled guilty and took responsibility for the crimes; his previous employer considered him to be a good employee; and the instant convictions were his first felonies and his first adult convictions. *Appellant's Brief* at 10.

[15]    Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. When reviewing a sentence, our principal role is to leave the outliers rather than necessarily achieve what is perceived as the correct result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[16]    "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). In addition, as we assess the nature of the offense and character of the offender, "we may look to any factors appearing in the record." *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Scott has

the burden to show that his sentence is inappropriate. *Anglemyer*, 868 N.E.2d at 490.

[17] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the General Assembly has selected as an appropriate sentence for the crime committed. *Childress v. State*, 848 N.E.2d 1073, 1081 (Ind. 2006). Scott was convicted of pointing a firearm, a Level 6 felony, and armed robbery as a Level 3 felony. The sentencing range for a Level 6 felony is between six months and two and one-half years, with an advisory sentence of one year. *See* Ind. Code § 35-50-2-7. The sentencing range for a Level 3 felony is between three and sixteen years, with an advisory sentence of nine years. *See* I.C. § 35-50-2-5. Scott's aggregate sentence is equal to the advisory for a Level 3 felony.

[18] As to the nature of Scott's offenses, he admitted that he entered a convenience store, pointed a handgun at an employee, and demanded money from the cash register. While the store employee was not physically harmed, and the nature of the armed robbery offense may not have been particularly egregious, we agree with the trial court that, given the "seriousness" of the armed robbery, the offense warranted the advisory sentence. *Transcript* at 48.

[19] Regarding character, Scott has a history of delinquency that reflects poorly on his character. On July 7, 2015, at the age of fifteen, he was arrested for an alcohol violation. Three months later, he was arrested for possession of marijuana and possession of paraphernalia and was placed on home detention

and, later, day reporting. He violated his probation on December 30, 2015, and again on January 7, 2016, by failing drug screens. He was eventually placed in an informal adjustment program but was unsuccessfully released.

[20] On March 7, 2016, Scott was adjudicated a delinquent for the possession of paraphernalia, was placed on probation, and (among other things) was ordered to complete a substance abuse assessment and attend all psychiatric appointments. However, less than two months later, he was arrested for possession of a controlled substance and theft; the State filed two probation violations; and Scott was placed on home detention. A little over two months later, the State filed a second home detention violation against Scott. Two days later, the State filed another probation violation against Scott because he failed a drug screen, and Scott was placed back on home detention. Four days later, the State filed additional home detention and probation violations against Scott.

[21] On July 15, 2016, at the age of sixteen, Scott was arrested for leaving home without permission and auto theft. Less than one month later, he was arrested for theft. On August 29, 2016, he was adjudicated a delinquent for the possession of a controlled substance and the theft counts, and he was placed on probation. He was successfully released from probation on May 24, 2017. However, on August 14, 2017, at age seventeen, Scott was arrested for leaving home without permission, auto theft, and theft of a firearm. In that case, a petition for waiver from juvenile court had been filed and was pending. Two days later, Scott committed the instant offenses, using the vehicle that he allegedly had stolen.

[22] Scott has been adjudicated a delinquent twice. He has violated his probation six times. He violated home detention. He had a petition for waiver from juvenile court pending in a separate case. As the trial court noted at sentencing, Scott was afforded many opportunities through informal adjustment, substance abuse assessment, individual counseling, and mental health and family preservation programs, but he did not take advantage of the programs. The court stated, and we agree, that this "does not speak well of [Scott's] character." *Id*. at 45.

[23] Regarding Scott's age at the time he committed the offenses, the trial court noted: "The strongest mitigatory [sic] however, is your age. Seventeen. That's awfully young. Awfully young." *Id*. at 47. Nevertheless, the court determined that Scott should receive the advisory sentence. Although a defendant's youth can, in some cases, constitute a significant mitigating factor warranting leniency, this is not always the case. *Coleman v. State*, 952 N.E.2d 377, 385 (Ind. Ct. App. 2011). As our Supreme Court explained, "Focusing on chronological age is a common shorthand for measuring culpability, but for people in their teens and early twenties it is frequently not the end of the inquiry. There are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful." *Ellis v. State*, 736 N.E.2d 731, 736 (Ind. 2000).

[24] In sum, although Scott's juvenile history is not aggravating to a high degree, it still is a poor reflection on his character. His frequent contacts with the juvenile system clearly did not deter him from committing the present offenses. The

juvenile system has given him numerous opportunities to reform his behavior without imposing incarceration, including informal adjustment, probation, and home detention. He has not taken advantage of the programs. Furthermore, we are not persuaded that Scott's sentence is inappropriate because of his age or because the instant case represents Scott's first felony convictions. We, therefore, find that both the nature of the offenses and Scott's character support the sentence imposed by the trial court. Scott's sentence is not inappropriate.

[25] Judgment affirmed.

Najam, J. and Robb, J., concur.